1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, Bar No. 206929
2  mavenatti@eaganavenatti.com
   Jason M. Frank, Bar No. 190957
3  jfrank@eaganavenatti.com
   Scott H. Sims, Bar No. 234148
4  ssims@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
5  Newport Beach, CA 92660
   Tel:   (949) 706-7000
6  Fax:   (949) 706-7050

7  Attorneys for Plaintiff GREG BARELA

8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13

14  GREG BARELA, an individual,                Case No.  8:15-cv-779

15          Plaintiff,

16          vs.                                 **COMPLAINT for:**

17  BROCK USA, LLC, d/b/a BROCK                    1. **Correction of Inventorship;**
    INTERNATIONAL LLC, a Colorado                  2. **Misappropriation of Trade Secret;**
18  limited liability company, and DOES 1 to          **and**
    50,                                            3. **Unjust Enrichment.**
19
            Defendants.                          **DEMAND FOR JURY TRIAL**
20

21

22

23

24

25

26

27

28

---

**COMPLAINT**

Plaintiff Greg Barela ("Barela") files this Complaint, including a demand for jury trial, against Defendant in this action Brock USA, LLC d/b/a Brock International LLC ("Brock") and states as follows:

## INTRODUCTION

1.      This is an action, pursuant to 35 U.S.C. § 256, to correct the inventorship of U.S. Patent No., 8,662,787 (the "787 Patent"), which is apparently held by Defendant Brock, as well as to assert related state law claims against Brock regarding the 787 Patent.

2.      Despite having been listed as an inventor of the 787 Patent in the initial provisional patent application, Barela was incorrectly omitted as an inventor in subsequent applications and in the 787 Patent as issued on or about March 4, 2014. Barela was omitted in spite of the fact that some or all of the claims made in the 787 Patent are identical to those listed in the provisional application and of which Barela was properly identified as an inventor.

3.      In fact, prior to the issuance of the 787 Patent and prior even to the initial provisional application, Barela was engaged in a course of dealing with Brock whereby Barela shared information regarding his invention with Brock under the belief (induced by Brock's conduct and assurances), and apparently now proven false, that this information would be kept confidential and that, should there come a time when patent protection was appropriate, Barela would be included as an inventor.

4.      However, as further alleged herein, Brock did not make good on these assurances and instead misappropriated Barela's invention which was, at the time, a trade secret entitled to protection as such.  Further, upon information and belief, Brock has been unjustly enriched by its conduct.

5.      Accordingly, among other things, Barela now seeks correction of inventorship and damages according to Brock's misappropriation and unjust enrichment.

**THE PARTIES**

6.     Plaintiff Greg Barela is an individual and is currently, as well as at all times relevant to this Complaint, a resident of the state of California.

7.     Upon information and belief, Defendant Brock USA LLC is a limited liability corporation organized and existing under the laws of the State of Colorado with its principal place of business in the State of Colorado.

**JURISDICTION AND VENUE**

8.     Pursuant to 28 U.S.C. §§ 1331 and 1343 this Court has original jurisdiction over Barela's first cause of action to correct patent inventorship pursuant to 35 U.S.C. § 256.  This Court has supplemental jurisdiction over the remaining state law causes of action pursuant to 28 U.S.C. § 1367, as such causes of action are so related to claims in the first cause of action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Central District and because Brock has transacted business in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

10.     Barela is the inventor of a product which can be summarized as a paving system for paving or flooring, which includes a top layer of a multiple of paving elements and an underlayment support layer in the form of panels which are suitable to support the paving elements and are made of a core with a top side and a bottom side. The support layer is made of interlocking panels that are resilient, porous, includes drainage holes and/or channels, and, in keeping with Barela's concerns, capable of being made out of recycled materials.  The invention includes a method of installing the paving system, including excavating surface material and preparing a substantially level

surface on the native soil, applying a layer of bedding sand to the native soil, applying the underlayment support layer to the bedding sand, and applying a layer of paving elements. Throughout this Complaint, the invention will be referred to as the "Paver Invention."

11.     The Paver Invention was unique in the industry and promised to substantially improve upon the current paver techniques and methods existing at the time of the invention. Consequently, Barela believed that it would change the paver game and be enormously financially successful once he was able to manufacture and distribute the product.

12.     In or about April of 2009, Barela began contacting various individuals and entities regarding his Paver Invention.

13.     At the time, Barela had already conceptualized and conceived of the Paver Invention. Further, Barela did in fact have a largely complete, if not completed, product, down to the development of the packaging of the product.

14.     It was around this time, that Barela first made contact with Brock regarding the Paver Invention.

15.     Thereafter, and over the course of a period of months from on or before June of 2009 through at least December of 2009, Barela communicated with individuals at Brock on a weekly, if not daily basis, regarding, among other things, the Paver Invention.

16.     Barela communicated with individuals at Brock via numerous telephone calls, emails, and in person meetings over a period of approximately 6 months. These communications took place on a daily basis at times with multiple messages and/or phone calls exchanged over the course of a day.

17.     The primary individuals with whom Barela communicated were Daniel Sawyer and Richard Runkles.

18.     During these communications, Barela shared extensive details with Brock regarding his Paver Invention and collaborated with, among others, Messrs. Sawyer and Runkles regarding the development and distribution of the product itself.

19.     Barela shared information regarding the nature of the invention as well as tests conducted regarding the invention.

20.     Among other things, individuals at Brock worked on creating brochures for the product.

21.     Over the course of their dealings, the parties repeatedly stressed the importance of keeping their discussions and the information shared therein confidential. Further, Barela made efforts that were reasonable under the circumstances to maintain the secrecy of his Paver Invention.  By way of example, at all relevant times, Barela undertook to maintain the secrecy of his invention in that he did not disclose it to others except in extremely limited circumstances where others agreed to strictly maintain secrecy and confidentiality.

22.     While Barela agreed to provide Brock with (a) information concerning his invention and (b) access to a sample(s) for certain testing and development as a product, this access to the sample was provided under the condition, acknowledgement and agreement that (1) the formula, method, technique, and/or process was proprietary, confidential, and a trade secret; (2) no direct or indirect attempt to reverse engineer the formula, method, technique, and/or process would occur; and (3) no other attempt to duplicate the invention or a substantial equivalent of the invention would occur.  Had Brock not so agreed and provided this consideration in exchange for access to sample(s) and information, Barela would have never provided any access to the sample or disclosed any such information.

23.     Through the course of their dealings, Barela was informed that at some point, Brock intended to apply for and prosecute the patent application pertaining to the Paver Invention.  Barela understood that he would be listed as an inventor and at one point, Barela was given a copy of the proposed application, which included him as an

inventor.  However, Barela does not recall ever being specifically informed that the application had been filed and was in fact being prosecuted.

24.    Nevertheless, in an application dated July 6, 2009, a patent was sought for a "Structural Underlayment Support System For Use With Paving And Flooring Elements."  The application listed Greg Barela and Daniel C. Sawyer, a Brock employee, as inventors.

25.    The application stated that the invention relates in general to driveway, sidewalk, and flooring systems.  In particular, this invention relates to paver brick support systems.  As such, the summary of invention described it as relating to exterior and interior flooring systems.  More particularly, the invention relates to flooring systems having paving elements such as, for example, paving bricks, tiles, block, rubber and wooden industrial floor blocks, and the like.  The flooring system includes an underlayment to support and stabilize the paving elements and infill material. Additionally, the underlayment may work in conjunction with other layers and materials to provide drainage and/or containment of fluids.

26.    The application included twelve (12) claims.  While the application does not make clear which inventor conceptualized each claim, Barela did in fact contribute in whole or in part to the conceptualization of each of the claims in the application. Accordingly, Barela is in fact a proper inventor as listed in the application.

27.    However, the claims made in the application do not capture the entirety of Barela's invention.

28.    In or about late 2009, relations broke down with Brock and Barela and they largely ceased having communications regarding Barela's Paver Invention.

29.    Barela understood that as a result, Brock would cease development of the Paver Invention.  Pursuant to the parties' course of dealing and prior discussions, no agreement was ever reached whereby Barela in any way transferred ownership or his rights in the Paver Invention to Brock or anyone associated with Brock.

30.    Barela was not aware that a patent application had been filed by Brock and understood, based on the parties' course of dealing and communications and the fact that Barela was the inventor, that no further action would be taken regarding any possible or contemplated patent prosecution.

31.    However, unbeknownst to Barela, Brock continued to prosecute the patent application.

32.    Barela has come to understand and believe that Brock continued to file subsequent patent applications and continued to prosecute the patent despite his understanding and the parties' agreement to the contrary.

33.    Barela is informed and believes that at least three other provisional patent applications were filed on January 21, 2010, September 2, 2009, and July 23, 2009 by or on behalf of Brock.

34.    None of these applications listed Barela as an inventor.  Instead, Richard Runkles and Daniel Sawyer were listed as inventors.  Messrs. Runkles and Sawyer were the primary individuals Barela dealt with at Brock and provided them with extensive information regarding the Paver Invention over the course of their dealings.

35.    These applications did not list Barela as an inventor despite the fact that as of July and September 2009, Barela was still actively communicating with Messrs. Runkles and Sawyer and continuing to provide them with information regarding the Paver Invention.

36.    Indeed, throughout this time period, Brock continued to represent the contrary and assured Barela that he would be included on any patent application.

37.    At no time was Barela informed that Brock intended to prosecute the patent application without including him as an inventor despite the fact that, unbeknownst to Barela, Brock was doing exactly that.

38.    Barela has come now to believe that the assurances Brock provided regarding the protection of confidential information were made to induce Barela to

provide the same but that Brock no longer and perhaps never intended to honor that commitment.

39.    The claims made in the subsequent applications nevertheless continued to embody and reflect Barela's invention and Barela should have been named as an inventor on each.

40.    Ultimately, Barela is informed and believes, the 787 Patent issued on or about March 4, 2010.  Like the original provisional application listing Barela as an inventor, the 787 Patent was titled "Structural Underlayment Support System For Use With Paving and Flooring Elements."

41.    Barela is informed and believes that Brock is the owner of the 787 Patent.

42.    Reflecting Barela's invention, the 787 Patent is described as a paving system for paving or flooring, including a top layer of a plurality of paving elements, and an underlayment support layer of a polymeric material configured into panels.  The panels are suitable to support the paving elements, the panels having a generally planar support surface and a recovery characteristic such that a deformation from a concentrated compressive load applied for a short duration returns the support surface to a generally planar condition.

43.    The 787 Patent is further summarized as relating a paving system for paving or flooring, including a top layer of a plurality of paving elements, and an underlayment support layer of polymeric material in the form of panels, the panels being suitable to support the paving elements, the panels being made of a core with a top side and a bottom side.  Among other things, the 787 Patent provides a paving system for paving and flooring including a top layer or a plurality of paving elements, and an underlayment support layer of a polymeric material configured into panels, the panels being suitable to support the paving elements, the panels having a generally planar support surface and a recovery characteristic such that a deformation from a concentrated compressive load applied for a short duration returns the support surface to a generally planar condition.  The panels are described as being suitable to support

the paving elements, and the panels being porous to the flow of fluids and capable of being made out of recycled materials. According to the 787 Patent, it describes a method of installing a paving system, the method including excavating surface material and prepare a substantially level surface on native soil, applying a layer of bedding sand to the native soil, applying an underlayment support layer of polymer material to the bedding sand, and applying a layer of paving elements.

44.     The 787 Patent includes forty-four (44) claims. Without limitation and simply by way of example, Claims 1-10 of the 787 Patent are substantially equivalent to the claims in the initial provisional patent application listing Barela as an inventor.

45.     Further, as alleged above, the initial provisional patent application claims did not capture the entirety of the Paver Invention.

46.     Thus, to the extent that the claims in the 787 Patent are not included within the claims made in the original application, that does not mean that Barela did not contribute to the conceptualization of the invention reflected in any additional claims made in the 787 Patent.

47.     Suffice it to say for purposes of this Complaint, the overlap between the claims made in the application and the 787 Patent establish that Barela should have been named as an inventor in the 787 Patent.

48.     Barela is informed and believes that Brock has sold a substantial number of products reflecting his Paver Invention, which are claimed to embody the 787 Patent and through which Brock has unjustly and improperly, through Barela's exclusion, realized a substantial revenue stream and profits.

49.     Barela did not discover Brock's conduct or the fact that the 787 Patent had issued until approximately one year ago.

50.     It was about that time that Barela discovered products being sold in a national chain store that reflected and embodied the Paver Invention.

51.     Prior to that time, Barela still believed, based on Brock's prior assurances, that the information shared with Brock had been done so confidentially and that no

further action was being taken or had been taken regarding any patent application or prosecution.  At no point previous or after his dealings with Brock concluded did Barela become aware that Brock continued to pursue the patent of his invention or that Brock had produced a product embodying Barela's invention.

52.    During the summer of 2014, Barela became aware of an action between Brock and another entity regarding the 787 Patent pending in the Northern District of Georgia.

53.    On or about September 15, 2014, Barela filed a motion to intervene in that action in order to assert his claims in that action.

54.    On or about December 19, 2014, prior to ruling on Barela's request to intervene and without reaching the merits of any of his claims, the District Court in that action dismissed the case without prejudice pursuant to a settlement reached between the existing parties to that action, but not Barela.

## COUNT I: CORRECTION OF INVENTORSHIP
## PURSUANT TO 35 U.S.C. § 256

55.    Barela re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 1 through 54 inclusive.

56.    Barela did jointly or individually conceive of one or more of the claims made in the 787 Patent.

57.    By Brock's own admission, Barela was an inventor of the invention as described in the initial provision patent application regarding the 787 Patent.

58.    The claims made in the provision patent application are reflected in the claims made in the 787 Patent.

59.    Based on the foregoing, Barela should have been listed as a co-inventor (at a minimum) but was not.

60.    As a result, and pursuant to 35 U.S.C. §256, Barela seeks the correction of inventorship on the 787 Patent.

61.     By virtue of Brock's misrepresentation(s) and/or concealment of the patent application process, any applicable statute of limitations was either tolled or did not begin to run until approximately one year ago.

## COUNT II:  MISAPPROPRIATION OF TRADE SECRET PURSUANT TO CALIFORNIA CIVIL CODE § 3426 ET SEQ.

62.     Barela re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 1 through 61 inclusive.

63.     Among other things, Barela was a California resident at all times material to the allegations in this Complaint.  Barela conceived of and developed the Paver Invention in the state of California.  Barela conducted testing regarding the Paver Invention in the state of California.

64.     Thus, for these and other reasons, California law applies to the adjudication of this cause of action.

65.     The formula, method, technique, and/or process for producing the Paver Invention is a trade secret in that it (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use and (2) was the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

66.     While the trade secret was subsequently disclosed in the provisional patent application, Barela was not aware that the application had been filed and further did not believe that any effort to obtain patent protection by Brock would take place once their business relationship ceased in late 2010.

67.     Barela thus never consented to the disclosure as it was in fact accomplished and believed, pursuant to Brock's assurances, that his trade secret remained confidential.

68.     Further, as set forth herein, Brock improperly removed Barela's name from subsequently filed provisional patent applications and did conceal that fact from Barela.

69.     Brock misappropriated Barela's trade secret in that:

    a. Brock acquired the trade secret and knew or had reason to know that the trade secret was acquired by improper means (i.e. was acquired by theft, misrepresentation, breach and/or inducement of a breach of a duty to maintain secrecy); and/or

    b. Brock disclosed or used the trade secret without express or implied consent and:

        i. Used improper means to acquire knowledge of the trade secret; and/or

        ii. At the time of disclosure or use, Brock knew or had reason to know their knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to Barela to maintain its secrecy or limit its use; and/or

        iii. Before a material change of its position, Brock knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

70.     As a proximate result of the Brock's misappropriation of Barela's trade secret, Barela has been actually damaged in an amount to be proven at trial with the exact amount of such harm to be stated according to proof.  Barela also seeks to recover for any unjust enrichment caused by Brock's misappropriation that is not taken into account in computing damages for Barela's actual loss.

71.     In the event the trier of fact determines that neither damages nor unjust enrichment caused by the misappropriation are provable, Barela further seeks payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

72.     Brock's misappropriation of Barela's trade secret was willful and malicious and therefore Brock is liable for an award of exemplary damages pursuant to California Civil Code § 3426.3.

73.     By virtue of Brock's misrepresentation(s) and/or concealment of the patent application process, any applicable statute of limitations was either tolled or did not begin to run until approximately one year ago.

## <u>COUNT III:  UNJUST ENRICHMENT</u>

74.     Barela re-alleges and incorporates herein by reference each and every allegation and statement contained in paragraphs 1 through 73 inclusive

75.     As a result of the aforementioned acts of Brock, Barela is informed and believes and based thereon alleges that Brock has received monies or other consideration through the marketing and sale of products embodying the 787 Patent unjustly at least in part due to Brock's improper exclusion of Barela from the 787 Patent.

76.     Under principles of equity and/or common law, and as a result of the unjust enrichment Brock received via the 787 Patent, Barela is entitled to the return and/or restitution of the amount unjustly received by Brock, plus interest thereon, at the legal rate.

77.     Barela also seeks a constructive trust as to the funds in question to preserve them and allow for a proper recovery.

78.     By virtue of Brock's misrepresentation(s) and/or concealment of the patent application process, any applicable statute of limitations was either tolled or did not begin to run until approximately one year ago.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

## AS TO COUNT I

a.    A declaration that Barela is a co-inventor of the 787 Patent and should have been listed as such;

b.    An order modifying the 787 Patent to reflect Barela's inventorship; and

c.    Such other and further relief as is just and appropriate.

## AS TO COUNT II

a.    For actual damages in an amount according to proof at trial;

b.    For the unjust enrichment caused by Brock's misappropriation that is not taken into account in computing damages for Barela's actual damages;

c.    In the event the trier of fact determines that neither actual damages nor unjust enrichment caused by the misappropriation are provable, for payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

d.    For exemplary damages;

e.    For costs of suit incurred herein, including attorney's fees; and

f.    For such other and further relief as the Court may deem just and proper.

## AS TO COUNT III

a.    Restitution of all amounts wrongfully obtained by Brock through the above-described actions;

b.    An award of post-judgment interest as provided by law; and

1        c.     Such other and further relief as is just and appropriate.

2

3   Dated:  May 19, 2015          EAGAN AVENATTI, LLP

4

5                       By:   /s/ Michael J. Avenatti
6                          MICHAEL J. AVENATTI
                       Attorneys for Plaintiff

7

8

9   **<u>DEMAND FOR TRIAL BY JURY</u>**

10       Plaintiff demands a trial by jury on all causes so triable.

11

12  Dated:  May 19, 2015          EAGAN AVENATTI, LLP

13

14                      By:   /s/ Michael J. Avenatti
15                         MICHAEL J. AVENATTI
16                         Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**