DAVIS WRIGHT TREMAINE LLP
Nicolas A. Jampol (State Bar No. 244867)
nicolasjampol@dwt.com
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017
Tel: (213) 633-6800
Fax: (213) 633-6899

LEE SHEIKH MEGLEY & HAAN LLC
David J. Sheikh (*Pro Hac Vice* application filed)
dsheikh@leesheikh.com
Joseph A. Culig (*Pro Hac Vice* application filed)
jculig@leesheikh.com
1 North Franklin Street, Suite 3340
Chicago, IL 60606
Phone: (312) 982-0070
Fax: (312) 982-0071

Attorneys for Defendant
BROCK USA, LLC,
d/b/a BROCK INTERNATIONAL LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG BARELA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BROCK USA, LLC, d/b/a BROCK INTERNATIONAL LLC, a Colorado limited liability company, and DOES 1 to 50,<br><br>Defendants. | Case No. 8:15-cv-779-JVS-JCG<br><br>**BROCK'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS BARELA'S FIRST AMENDED COMPLAINT**<br><br>**DECLARATION OF JOSEPH A. CULIG AND [PROPOSESD] ORDER FILED CONCURRENTLY**<br><br>Date:  August 10, 2015<br>Time: 1:30 p.m.<br>Crtrm: 10C |

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12 and sections 3 and 4 of the Federal Arbitration Act, on August 10, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable James V. Selna in Courtroom 10C of the above-entitled Court, located at 411 W. Fourth Street, Santa Ana, California 92701, Defendant Brock USA, LLC, d/b/a Brock International LLC ("Brock") will and hereby does move the Court for an Order compelling Plaintiff Greg Barela ("Barela") to arbitrate the claims he asserts in his First Amended Complaint or, in the alternative, an Order dismissing each of Barela's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is brought for the reasons stated below.

1.     The causes of action asserted by Barela in his First Amended Complaint are related to dealings that took place several years ago between Brock and Barela, through his then-company Ecoalliance.  These dealings were governed by a June 1, 2009 Mutual Confidentiality and Non-Use Agreement ("the Agreement"), which obligated the parties to submit "any and all disputes arising under or related to [the] Agreement which cannot be resolved through negotiations" to binding arbitration.  Each cause of action asserted by Barela falls within the scope of this arbitration provision.  Because Barela has refused to voluntarily arbitrate his claims pursuant to the Agreement, an Order from the Court compelling arbitration is necessary.

2.     Even if the Court determines that Barela's causes of action are not subject to mandatory arbitration, each cause of action should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  Barela's claims for correction of inventorship are inadequately pled and fail to give Brock fair notice of Barela's related contentions; his claims for trade secret

misappropriation and unjust enrichment are time-barred; and his unjust enrichment claim is preempted by California's Uniform Trade Secret Act.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declaration of Joseph A. Culig and exhibits attached thereto, any matters of which this Court may take judicial notice, all pleadings, files, and records in this action, and such other argument as may be presented to the Court at the time of the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 22, 2015.  (Dkt. No. 15.)


Dated:  July 8, 2015                     Respectfully submitted,

                                         /s/ Nicolas A. Jampol
                                         _____

                                         Nicolas A. Jampol
                                         DAVIS WRIGHT TREMAINE LLP

                                         David J. Sheikh
                                         Joseph A. Culig
                                         LEE SHEIKH MEGLEY & HAAN LLC

                                         Attorneys for Defendant
                                         BROCK USA, LLC d/b/a
                                         BROCK INTERNATIONAL LLC

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..................................................................1

II.   BACKGROUND ....................................................................2

III.  APPLICABLE LEGAL STANDARDS ..........................................8

IV.   ALL OF BARELA'S CLAIMS MUST BE ARBITRATED .....................10

    A.   The FAA Governs Because the Agreement
        Evidences a Transaction "Involving Commerce" ................10

    B.   Barela is Bound by the Agreement ...................................10

    C.   The Arbitration Provision in the Agreement
        Encompasses the Issues in the FAC ...................................11

V.    ALTERNATIVELY, THE COURT SHOULD DISMISS
    THE FAC PURSUANT TO RULE 12(B)(6)...................................15

    A.   Barela Has Not Adequately Pled His Correction of Inventorship
        Claims...........................................................................15

    B.   Barela's Trade Secret Misappropriation Claim is Time-Barred .........18

    C.   Barela's Unjust Enrichment Claim is
        Time-Barred and Preempted by CUTSA ............................22

VI.   IF THE COURT COMPELS ARBITRATION, IT SHOULD DISMISS THE
    FAC WITH PREJUDICE OR, AT LEAST, STAY THE LITIGATION .....23

VII.  ALTERNATIVELY, THE COURT SHOULD DISMISS
    THE FAC WITH PREJUDICE PURSUANT TO RULE 12(B)(6)..............23

VIII. CONCLUSION..................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barragan v. Personniq, LLC*
  2014 U.S. Dist. LEXIS 131294 (N.D. Cal. Sept. 17, 2014) ..............................22

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .........................................................................................17

*Black v. Ritz-Carlton Hotel Co.*
  977 F. Supp. 2d 996 (C.D. Cal. 2013) ............................................................8, 9

*Bledsoe Land Co. LLLP v. Forest Oil Corp.*
  277 P.3d 838 (Colo. App. 2011) .......................................................................11

*Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Phila. Indem. Ins. Co.,*
  2015 U.S. Dist. LEXIS 51091 (E.D. Cal. Apr. 17, 2015) ...................................8

*CardiAQ Value Techs., Inc. v. Neovasc, Inc.*
  57 F. Supp. 3d 118 (D. Mass. 2014) .................................................................16

*Cellular Accessories for Less, Inc. v. Trinitas LLC*
  2014 U.S. Dist. LEXIS 130518 (C.D. Cal. Sept. 16, 2014) ..............................23

*City & County of Denver v. District Court*
  939 P.2d 1353 (Colo. 1997) ..............................................................................14

*Cmty. Cause v. Boatwright*
  124 Cal. App. 3d 888 (1981)................................................................ 18, 20, 21

*Coinstar, Inc. v. CoinBank Automated Sys., Inc.*
  998 F. Supp. 110 (N.D. Cal. 1998) .....................................................................9

*Creative Compounds, LLC v. Boldt*
  2011 U.S. Dist. LEXIS 98210 (S.D. Cal. Aug. 31, 2011) ........................... 21, 24

*Daniels-Hall v. Nat'l Educ. Ass'n*
  629 F.3d 992 (9th Cir. 2010)...............................................................................9

*Digital Envoy, Inc. v. Google, Inc.*
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) ...........................................................23

*Dorado v. Shea Homes Ltd. P'ship*
    2011 U.S. Dist. LEXIS 97672 (E.D. Cal. Aug. 31, 2011).................................9

*Ethicon, Inc. v. U.S Surgical Corp.*
    135 F.3d 1456 (Fed. Cir. 1998).......................................................................16

*Ex Parte Haas,*
    2006 Pat. App. LEXIS 4413 (B.P.A.I. June 5, 2006).....................................21

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*
    569 F. Supp. 2d 929 (N.D. Cal. 2008) .............................................................24

*FrontRange Solutions USA, Inc. v. NewRoad Software, Inc.*
    505 F. Supp. 2d 821 (D. Colo. 2007)...............................................................12

*Galbraith v. Clark*
    122 P.3d 1061 (Colo. App. 2005) ..............................................................13, 14

*Gen. Bedding Corp. v. Echevarria*
    947 F.2d 1395 (9th Cir. 1991) .........................................................................18

*Green Tree Fin. Corp.-Ala. v. Randolph*
    531 U.S. 79 (2000).............................................................................................8

*Harris v. N.Y. State Dep't of Health*
    202 F. Supp. 2d 143 (S.D.N.Y. 2002)...............................................................9

*Howsam v. Dean Witter Reynolds*
    537 U.S. 79 (2002) ......................................................................................10, 11

*IBM Corp. v. Zachariades*
    1995 U.S. App. LEXIS 36281 (9th Cir. Nov. 22, 1995) .......................18, 20, 21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*
    171 Cal. App. 4th 939 (2009) ...........................................................................23

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ...........................................................................9

*Landow v. Wachovia Secs., LLC*
    966 F. Supp. 2d 106 (E.D.N.Y. 2013) ...............................................................9

*Lewis v. UBS Fin. Servs. Inc.*
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ................................................23

*Luna v. Kemira Specialty, Inc.*
  575 F. Supp. 2d 1166 (C.D. Cal. 2008) .......................................... 9, 17

*Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*
  805 P.2d 1161 (Colo. App. 1990) ................................................ 11, 12

*MedioStream, Inc. v. Microsoft Corp.*
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983) ...........................................................................11

*Moore v. Georgeson*
  679 P.2d 1099 (Colo. App. 1983) ...................................................12

*Murphy v. DirecTV, Inc.*
  724 F.3d 1218 (9th Cir. 2013) .........................................................10

*P & P Indus., Inc. v. Sutter Corp.*
  179 F.3d 861 (10th Cir. 1999) .........................................................13

*Raza v. Siemens Med. Solutions USA Inc.*
  607 F. Supp. 2d 689 (D. Del. 2009) ...................................... 18, 19, 21

*RealNetworks, Inc. v. DVD Copy Control Ass'n*
  2010 U.S. Dist. LEXIS 1433 (N.D. Cal. Jan. 6, 2010) ......................9

*Scafidi v. W. Loan & Bldg. Co.*
  72 Cal. App. 2d 550 (1946).............................................................24

*Shkolnikov v. JPMorgan Chase Bank*
  2012 U.S. Dist. LEXIS 177573 (N.D. Cal. Dec. 14, 2012)...............15

*Simula, Inc. v. Autoliv, Inc.*
  175 F.3d 716 (9th Cir. 1999).............................................................13

*Smith v. Multi-Financial Secs. Corp.*
  171 P.3d 1267 (Colo. App. 2007) .....................................................13

*St. Joseph Solutions, LLC v. Microtek Med., Inc.*
  2011 U.S. Dist. LEXIS 136192 (S.D. Ohio Nov. 28, 2011)...............16

*Trovan, Ltd. v. Sokymat SA*
   299 F.3d 1292 (Fed. Cir. 2002)...........................................................................16

**Statutes**

California Uniform Trade Secret Act, Cal. Civ. Code § 3426.6 .............................18

Federal Arbitration Act, 9 U.S.C. § 2 ...................................................................10

Federal Arbitration Act, 9 U.S.C. § 3 ............................................................. 1, 23

Federal Arbitration Act, 9 U.S.C. § 4 .................................................................1, 8

**Rules**

Fed. R. Civ. P. 8 .................................................................................................17

Fed. R. Civ. P. 12 ......................................................................................... 1, 2, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and sections 3 and 4 of the Federal Arbitration Act ("FAA"), Defendant Brock USA, LLC d/b/a Brock International LLC ("Brock") respectfully moves the Court for an Order compelling Plaintiff Greg Barela ("Barela") to arbitrate the claims he asserts in this litigation. Each claim relates to dealings that took place several years ago between Brock and Barela (through his then-company Ecoalliance) and are governed by a Mutual Confidentiality and Non-Use Agreement ("the Agreement"), which obligated the parties to submit "***any and all disputes arising under or related to*** [the] Agreement which cannot be resolved through negotiations" to binding arbitration.

It should come as no surprise to Barela that his claims are subject to arbitration.  When Barela previously attempted to intervene and assert the same claims in a separate lawsuit between Brock and Oldcastle Architectural, Inc. ("Oldcastle"), Brock notified Barela of his obligation to arbitrate instead of litigate. *Oldcastle Architectural, Inc. v. Brock USA, LLC, d/b/a Brock Int'l LLC* ("Oldcastle Litigation"), Case No. 1:14-cv-636-SCJ (N.D. Ga.).  Barela refused to comply with his obligation, and Brock was forced to initiate arbitration proceedings.  Because the Oldcastle Litigation was subsequently dismissed pursuant to a settlement agreement between Brock and Oldcastle, Barela's motion to intervene was denied as moot, and, as a result, Brock did not have to proceed with arbitration.

Six months later, and without any prior notice to Brock, Barela has now initiated this lawsuit.  As required by the Agreement, Brock contacted Barela to attempt to resolve his disputes without the need for arbitration.  Barela did not respond and, accordingly, Brock has reinitiated arbitration proceedings.  Barela's steadfast refusal to cooperate with Brock regarding arbitration makes an order compelling the arbitration of Barela's claims necessary.

If, however, the Court determines that Barela's claims are not arbitrable, Brock respectfully requests the dismissal of each of Barela's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Barela's claims for correction of inventorship are inadequately pled; his claims for trade secret misappropriation and unjust enrichment are time-barred; and his unjust enrichment claim is preempted by California's Uniform Trade Secret Act ("CUTSA").

This motion is made following the conference of counsel pursuant to L.R. 7-3, which was held on June 22, 2015. (Dkt. No. 15.)

## II.    BACKGROUND

Brock was co-founded in 1998 by Daniel Sawyer, who is also Brock's current CEO. Brock initially focused on impact protection material for the athletic equipment and outdoor backpacking equipment industries and later expanded its focus to include underlayment products, which are used to support the top layer(s) of, for example, artificial turf, carpeting, flooring, and pavement applications. For over a decade, Brock has developed and commercialized its Base System line of underlayment products, which includes Performance Base®, Performance Base® F Series, and PowerBase® for use with artificial turf; PlayBase® for use with playground applications; and PaverBase® for use with hardscape and driveway applications. Brock commercially introduced Performance Base® in 2004; Performance Base® F Series in 2007; PowerBase® and PlayBase® in 2009; and PaverBase® in 2010. *See* Declaration of Joseph A. Culig in Support of Brock's Motion to Compel Arbitration or, in the Alternative, to Dismiss Barela's First Amended Complaint ("Culig Decl."), ¶ 6, Ex. 5 at pp. 16, 31-33.

In this lawsuit, Barela alleges, without corroborating evidence, that he invented a paving and flooring system and a method of installing the paving system (the "Paver Invention"). Culig Decl., ¶ 2, Ex. 1 at ¶ 12. Barela claims that he "conceptualized and conceived of the Paver Invention" and began contacting

- 2 -

various individuals and entities, including Brock, regarding the Paver Invention "[in] or about April of 2009." *Id.* at ¶¶ 14-16. Barela also contends that from approximately June 2009 to at least December 2009, he communicated with individuals at Brock regarding the Paver Invention and worked with them regarding the development and distribution of a corresponding product. *Id.* at ¶¶ 17-21. According to Barela, the parties understood that these dealings were to be treated as confidential. *Id.* at ¶ 23.

In June 2009, Brock and Barela, as president of his then-company Ecoalliance, executed a Mutual Confidentiality and Non-Use Agreement ("the Agreement"). Culig Decl., ¶ 3, Ex. 2. At that time, Brock and Ecoalliance were contemplating a business relationship in which Brock would develop and sell products to Ecoalliance (the "Transaction"). *Id.* at Recital B. The parties entered into the Agreement to address the confidentiality and non-use of information that would be exchanged in connection with the Transaction. *Id.* at Recitals C & D.

Barela contends that, during their dealings, Brock informed him that it intended to apply for and prosecute a patent application pertaining to the Paver Invention. Ex. 1 at ¶ 25. Barela further contends that he understood that he would be a named inventor on the patent application and that he received a copy of the patent application, on which he was listed as an inventor. *Id.*

On July 6, 2009, Brock filed a provisional patent application titled "Structural Underlayment Support System For Use With Paving And Flooring Elements," listing Barela and Daniel Sawyer as inventors. *Id.* at ¶¶ 27, 43. Barela contends that he contributed "to the conceptualization of each of the claims" in this provisional application. *Id.* at ¶ 29. Brock subsequently filed three more provisional patent applications on July 23, 2009, September 2, 2009, and January 10, 2010, which listed Mr. Sawyer and Richard Runkles (Brock's President) as inventors. *Id.* at ¶¶ 36, 37; Ex. 5 at p. 13.

By way of background, the filing of a provisional patent application can establish the earliest date (or priority date) of an invention in a later-filed, formal non-provisional patent application.   An applicant must file the non-provisional application within one year after the provisional application is filed; otherwise, the provisional application expires.   Although a provisional application can establish priority for a non-provisional application, there are differences between the two applications.   For example, a provisional application does not require an oath or declaration regarding inventorship, nor does it require formal patent claims, both of which are required for a non-provisional application.   *See* Culig Decl., ¶ 16, Ex. 15.   Accordingly, the final and ultimate determination of inventorship for a patent application is made in connection with the non-provisional application and based on the precise content of the claims found therein.

By late 2009, communications between Brock and Barela regarding the Paver Invention had largely ceased.   Ex. 1 at ¶ 31.   On July 6, 2010, Brock filed application number 12/830,902, which was the non-provisional application that ultimately produced U.S. Patent No. 8,662,787 ("the 787 Patent").   Culig Decl., ¶ 4, Ex. 3 at (21, 22).

On November 11, 2010, the United States Patent and Trademark Office ("USPTO") published the application that would later issue as the 787 Patent.   *Id.* at (65); Culig Decl., ¶ 5, Ex. 4 at (43).[1]   The 787 Application, which is titled "Structural Underlayment Support System for Use With Paving and Flooring Elements," named Mr. Sawyer and Mr. Runkles as co-inventors and identified the July 6, 2009, July 23, 2009, September 2, 2009, and January 21, 2010 provisional

---

[1] The application that ultimately issued as the 787 Patent was published as U.S. Patent Application Publication No. US 2010/0284740.   Culig Decl, ¶ 5, Ex. 4, at (10).   For simplicity, Brock will refer to this publication as "the 787 Application."

applications (as well as other provisional and non-provisional applications) as related patent applications.  Ex. 4 at (54, 60, 75).  The 787 Application's Abstract describes the inventions contained therein as

> [a] paving system for paving or flooring [that] includes a top layer of a plurality of paving elements, and an underlayment support layer of a polymeric material configured into panels.  The panels are suitable to support the paving elements, the panels having a generally planar support surface and a recovery characteristic such that a deformation from a concentrated compressive load applied for a short duration returns the support surface to a generally planar condition.

*Id.* at (57).

The 787 Patent issued on March 4, 2014.  Ex. 1 at ¶ 2; Ex. 3 at (45).  Like the 787 Application, the 787 Patent is titled "Structural Underlayment Support System for Use With Paving and Flooring Elements."  Ex. 1 at ¶ 43; Ex. 3 at (54).  And just as the 787 Application did, the 787 Patent names Mr. Sawyer and Mr. Runkles as co-inventors and identifies the July 6, 2009, July 23, 2009, September 2, 2009, and January 21, 2010 provisional applications.  Ex. 3 at (60, 75).  The Abstract of the 787 Patent is identical to the Abstract of the 787 Application and, according to Barela, allegedly reflects his purported invention:

| Abstract of the 787 Patent and the 787 Application | First Amended Complaint |
|---|---|
| A paving system for paving or flooring includes a top layer of a plurality of paving elements, and an underlayment support layer of a polymeric material configured into panels.  The panels are suitable to | [A] paving system for paving or flooring, including a top layer of a plurality of paving elements, and an underlayment support layer of a polymeric material configured into panels.  The panels are suitable to |

| support the paving elements, the panels having a generally planar support surface and a recovery characteristic such that a deformation from a concentrated compressive load applied for a short duration returns the support surface to a generally planar condition. | support the paving elements, the panels having a generally planar support surface and a recovery characteristic such that a deformation from a concentrated compressive load applied for a short duration returns the support surface to a generally planar condition. |
| --- | --- |

Ex. 1 at ¶ 45; Exs. 3 and 4 at (57). Barela contends that the overlap between claims in the July 6, 2009 provisional application and claims found in the issued 787 Patent also purportedly establish that Barela should have been named as an inventor of the 787 Patent. Ex. 1 at ¶¶ 47, 50.

Barela alleges that he was unaware that Brock filed the July 6, 2009 provisional application and that Brock continued to prosecute this application without his knowledge. *Id.* at ¶¶ 25, 33, 34, 40. Moreover, Barela alleges that he did not discover the issuance of the 787 Patent or Brock's sale of products that allegedly reflect and embody the Paver Invention until approximately one year ago. *Id.* at ¶¶ 51-53.

In 2014, several years after Brock's relationship with Barela ended, Barela first raised his current allegations of alleged wrongdoing. On September 15, 2014, Barela sought to intervene in the Oldcastle Litigation to assert claims for correction of inventorship, misappropriation of trade secrets, and unjust enrichment against Brock. Ex. 1 at ¶¶ 55-56; Culig Decl., ¶¶ 7, 8, Exs. 6, 7. Brock opposed Barela's motion to intervene and filed a motion to compel arbitration based on the aforementioned Agreement or, alternatively, to dismiss on grounds similar to those set forth in this motion. Culig Decl., ¶ 9, Ex. 8. Although Barela acknowledged

the Agreement and did not dispute that it applied to his dealings with Brock, he argued that the Agreement did not govern his claims, relying on post-agreement, extrinsic communications with Brock that, according to Barela, indicated that he did not intend the Agreement to apply to his alleged Paver Invention.  Culig Decl., ¶ 10, Ex. 9 at pp. 5-11.  Ultimately, the district court dismissed the Oldcastle Litigation pursuant to a settlement agreement between Oldcastle and Brock, rendering Barela's motion to intervene moot.  Culig Decl., ¶ 12, Ex. 11; Ex. 1 at ¶ 57.

In response to Barela's attempt to intervene in the Oldcastle Litigation (and after Barela refused to negotiate a resolution of his claims), Brock initiated arbitration proceedings.  Culig Decl., ¶ 13, Ex. 12.  Barela ignored this, and in the six months following the dismissal of the Oldcastle Litigation, Barela failed to take any overt steps to pursue his claims further.  Accordingly, Brock did not proceed with arbitration, as it reasonably believed that Barela had decided to drop his claims.

Nonetheless, Barela brought this litigation against Brock on May 19, 2015, bringing claims for correction of inventorship, misappropriation of trade secrets, and unjust enrichment that are nearly identical to those claims Barela sought to assert in the Oldcastle Litigation.  *See* Culig Decl., ¶ 8, Ex. 7.  On May 29, 2015, Brock contacted Barela to initiate negotiations to resolve his claims without arbitration, as required by the Agreement.  Culig Decl., ¶ 14, Ex. 13.  Again, Barela refused to engage in any such negotiations, and once the period for negotiations required by the Agreement expired, Brock reinitiated arbitration proceedings to fully protect its rights.  Culig Decl., ¶ 15, Ex. 14.[2]

---

[2] If the Court determines that Barela's claims need not be arbitrated, Brock will not proceed with the arbitration unless Barela also agrees to arbitrate.

- 7 -

## III.  APPLICABLE LEGAL STANDARDS

When a party refuses "to arbitrate under a written agreement for arbitration," the aggrieved party may move for an order compelling the refusing party to arbitrate under section 4 of the Federal Arbitration Act ("FAA"), or it may seek to enforce the arbitration agreement through a motion to dismiss for lack of subject matter jurisdiction.  9 U.S.C. § 4; *Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Phila. Indem. Ins. Co.*, 2015 U.S. Dist. LEXIS 51091, at \*6-7 (E.D. Cal. Apr. 17, 2015).  In both instances, Barela bears the burden of proof.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Cancer Ctr. Assocs.*, 2015 U.S. Dist. LEXIS 51091, at \*7 ("Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists.").

Here, Brock is factually challenging Barela's assertion of subject matter jurisdiction as to his First Amended Complaint ("FAC") because all of his claims are arbitrable.  In these circumstances, the Court may consider evidence outside of the FAC without converting Brock's motion into one for summary judgment. *Cancer Ctr. Assocs.*, 2015 U.S. Dist. LEXIS 51091, at \*7-8.  Brock may offer "affidavits or other evidence to dispute the allegations in [Barela's] complaint" and, in response, Barela "must present affidavits or any other evidence necessary to satisfy [his] burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* at \*8 (internal quotations omitted).  As such, the Court need not presume the truthfulness of Barela's allegations.  *Id.*

"Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the [plaintiff] to relief."  *Black v. Ritz-Carlton Hotel Co.*, 977 F. Supp. 2d 996, 1010 (C.D. Cal. 2013).  In ruling on a Rule 12(b)(6) motion, the

Court may consider certain items outside of the pleadings without converting it into one for summary judgment. *See id.* For instance, under the "incorporation by reference" doctrine, the Court may rely upon a document where "the plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Such a document is treated as part of the complaint and the contents are assumed true for purposes of a Rule 12(b)(6) motion. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The Court may also take judicial notice of patents, patent applications, and court records in related cases that directly relate to the matters at issue. *See Coinstar, Inc. v. CoinBank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998); *Dorado v. Shea Homes Ltd. P'ship*, 2011 U.S. Dist. LEXIS 97672, at *7 (E.D. Cal. Aug. 31, 2011). Judicial notice may also be taken of statements made by a party in other judicial proceedings. *See RealNetworks, Inc. v. DVD Copy Control Ass'n*, 2010 U.S. Dist. LEXIS 1433, at *11 (N.D. Cal. Jan. 6, 2010); *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002). This is "to prevent plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Landow v. Wachovia Secs., LLC*, 966 F. Supp. 2d 106, 120 (E.D.N.Y. 2013) (internal quotations omitted).

On a Rule 12(b)(6) motion, the Court need not accept the truth of unreasonable inferences or conclusory legal allegations couched as factual allegations. *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008). The Court may also disregard allegations that are contradicted by judicially noticed matters. *Black*, 977 F. Supp. 2d at 1010.

- 9 -

## IV.  ALL OF BARELA'S CLAIMS MUST BE ARBITRATED

Barela has brought four causes of action:  correction of inventorship pursuant to 35 U.S.C. § 256 (Count I); declaratory relief based on his claim for correction of inventorship (Count II); trade secret misappropriation (Count III); and unjust enrichment (Count IV).  Ex. 1 at ¶¶ 58-93.  Because all of these claims "touch matters" covered by the Agreement, the Court must compel Barela to arbitrate them.

### A.  The FAA Governs Because the Agreement Evidences a Transaction "Involving Commerce"

For the FAA to apply to an arbitration provision, the provision must be found in a contract involving interstate commerce.  9 U.S.C. § 2; *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1224 (9th Cir. 2013).  Here, the Agreement undisputedly evidences a transaction involving interstate commerce, namely a contemplated business relationship between two parties in different states (Colorado and California) for the sale and purchase of products.  The business relationship would be one "in which Brock will sell products to Ecoalliance, and will develop products for sale to Ecoalliance, and Ecoalliance will purchase products from Brock[.]"  Ex. 2 at Recital B.  As such, the FAA governs.

### B.  Barela is Bound by the Agreement

In addressing a motion to compel arbitration, the Court must determine whether the parties at issue are contractually bound to arbitrate.  *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002).  Barela has never disputed that he is bound by the Agreement, which stands to reason because he executed the Agreement as President of his then-company, Ecoalliance.  Barela's position has been that the Agreement between ***him and Brock*** does not govern his claims against Brock because it does not cover the Paver Invention:

- 10 -

It was not *my* agreement at the time nor was it ever *my* agreement that [the Agreement] had to do with the Paver Invention.  Rather, [the Agreement] addressed the landscape/turf product.

\*\*\*

[I]t was *our* agreement…that the [Agreement] addressed the landscape/turf product and not the Paver Invention that the parties continued to discuss after the date on [the Agreement]….

Culig Decl., ¶ 11, Ex. 10 at ¶¶ 5, 14 (emphases added).  Accordingly, Barela is bound by the terms of the Agreement.

## C.      The Arbitration Provision in the Agreement Encompasses the Issues in the FAC

The Court must next determine whether the arbitration provision encompasses the disputes at issue, *i.e.*, the scope of arbitrable issues.  *See Howsam*, 537 U.S. at 84.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Under Colorado law,[3] the Court must first determine whether the contract, contractual provision, or contractual term at issue is ambiguous.  *See Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1163-64 (Colo. App. 1990).  In doing so, the Court must examine and construe the provisions of the contract "in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms its subject matter."  *Bledsoe Land Co. LLLP*

---

[3]   The Agreement states that "the validity and interpretation of this Agreement shall be governed by the laws of the State of Colorado."  Ex. 2 at ¶ 7.2.  Moreover, Barela previously relied upon Colorado law to interpret the Agreement.  Ex. 9 at pp. 7-8.

1   *v. Forest Oil Corp.*, 277 P.3d 838, 842-43 (Colo. App. 2011) (internal quotations

2   and citation omitted).  Unambiguous contracts are enforced as written and cannot

3   be varied by extrinsic evidence.  *Magnetic Copy Servs.*, 805 P.2d at 1163.  This is

4   especially true where an unambiguous contract includes an integration clause.  *See*

5   *Moore v. Georgeson*, 679 P.2d 1099, 1101 (Colo. App. 1983); *FrontRange*

6   *Solutions USA, Inc. v. NewRoad Software, Inc.*, 505 F. Supp. 2d 821, 832 (D. Colo.

7   2007).

8          Here, several provisions of the Agreement are relevant to the Court's

9   inquiry.  ***First***, the Agreement restricted the use and treatment of Confidential

10   Information (as defined in the Agreement) that was exchanged by the parties in

11   connection with this Transaction (the "Confidentiality Provision").  Ex. 2 at

12   Recitals C & D, ¶¶ 1.1-1.4, ¶ 3.  The party receiving Confidential Information (the

13   "Recipient") was not permitted to

14          disclose or provide any Confidential Information to any person

15          outside of Recipient's organization without the prior written consent

16          of [the party disclosing the Confidential Information or]

17                                    ****

18          use the Confidential Information for any commercial, competitive, or

19          other purpose whatsoever, except for use in connection with the

20          Transaction and discussions related thereto.

21   *Id.* at ¶¶ 1.1, 1.4.  ***Second***, the Agreement addressed the ownership of intellectual

22   property rights in connection with the Transaction, stating that "the intellectual

23   property rights to any improvements to the Brock Products developed by

24   [Ecoalliance] as a result of, or in the course of the Transaction, shall belong

25   exclusively to Brock" (the "IP Ownership Provision").  *Id.* at ¶ 2.  ***Third***, the

26   parties agreed that "any and all disputes arising under or related to [the] Agreement

27   which cannot be resolved through negotiations between the Parties shall be

28
                                   - 12 -

submitted to binding arbitration" (the "Arbitration Provision").  *Id.* at ¶ 7.2. Lastly, the Agreement constituted "the entire agreement between the parties hereto concerning the matters covered herein" and stated that "there are no understandings, agreements, representations or warrants, express or implied, which are not specified in writing and signed by the parties" (the "Integration Provision"). *Id.* at ¶ 7.5.

Nothing in these provisions creates an ambiguity that would cause the Court to enforce the Agreement in any way other than written.  Moreover, the Integration Provision precludes the consideration of any extrinsic evidence to vary any of these provisions, and the Arbitration Provision in particular.  The only remaining question is whether Barela's claims against Brock are governed by the Arbitration Provision.

The Arbitration Provision applies to "any and all disputes arising under or related to [the] Agreement."  *Id.* at ¶ 7.2.  Arbitration clauses with such broad language are construed liberally with an eye toward compelling arbitration.  *See, e.g., P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871-72 (10th Cir. 1999) (arbitration clause governed "any controversy, claim, or breach ***arising out of or relating to*** this Agreement") (emphasis in original); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-25 (9th Cir. 1999) (arbitration clause governed "[a]ll disputes arising in connection with this Agreement"); *Smith v. Multi-Financial Secs. Corp.*, 171 P.3d 1267, 1270 (Colo. App. 2007) ("When an arbitration clause uses the phrase 'arising out of' or 'relating to,' it is broad in scope.").  When language in an arbitration clause is broad, as is the case here, "the strong presumption in favor of arbitrability…applies with even greater force."  *P & P Indus.*, 179 F.3d at 871 (internal quotations omitted).

To be arbitrable, Barela's claims need only "touch matters" covered by the Agreement.  *Simula*, 175 F.3d at 721; *Galbraith v. Clark*, 122 P.3d 1061, 1064-65

1    (Colo. App. 2005).  To determine this, the Court must focus on Barela's underlying
2    factual allegations, rather than his characterization of his claims:  "[c]reative legal
3    theories asserted in complaints should not be permitted to undermine the
4    presumption favoring" arbitration.  *City & County of Denver v. District Court*, 939
5    P.2d 1353, 1364 (Colo. 1997); *Galbraith*, 122 P.3d at 1064.

6            Barela alleges that from June 2009 to December 2009 – a period of time
7    governed by the Agreement – he shared confidential information with Brock
8    regarding his purported Paver Invention.  Ex. 1 at ¶¶ 17, 18, 20, 23.  Subsequent to
9    this disclosure, Brock allegedly used this confidential information by incorporating
10   it into patent applications without Barela's consent.  *Id.* at ¶¶ 33-35, 40, 42, 45, 79,
11   80.   Brock  also  allegedly  incorporated  this  confidential  information  into  a
12   substantial number of its products without Barela's consent.  *Id.* at ¶¶ 51, 53, 54.
13   This alleged misconduct by Brock forms the basis for Barela's claims:

14           [P]rior to the issuance of the 787 Patent and prior even to the initial
15           provisional application, Barela was engaged in a course of dealing
16           with Brock whereby Barela shared information regarding his
17           invention with Brock under the belief (induced by Brock's conduct
18           and assurances), and apparently now proven false, that this
19           information would be kept confidential and that, should there come a
20           time when patent protection was appropriate, Barela would be
21           included as an inventor.

22                                          ****

23           Brock did not make good on these assurances and instead
24           misappropriated Barela's invention which was, at the time, a trade
25           secret entitled to protection as such….  In addition, upon information
26           and belief, Brock has been unjust enriched by its conduct[.]

27   *Id.* at ¶¶ 3, 5, 6.

28
                                          - 14 -

The factual allegations underlying Barela's claims more than satisfy the aforementioned "touch" requirement.  Brock's alleged conduct – disclosure of Confidential Information to third parties without Barela's consent and use of the Confidential Information for purposes other than the Transaction – is explicitly prohibited by the Agreement.  Ex. 2 at ¶¶ 1.1, 1.4.  Moreover, Barela contends that he should be a named inventor on the 787 Patent and other patent applications based on his alleged confidential disclosure of information regarding the Paver Invention to Brock from June 2009 to December 2009.  *See, e.g.*, Ex. 1 at ¶¶ 17, 18, 20, 23, 25, 42, 50.  Indeed, Barela contends that the parties allegedly had an understanding and agreement that Barela would have at least partial ownership of patents arising out of the alleged Paver Invention.  *Id.* at ¶¶ 4, 26, 64, 70.  These contentions clearly implicate a dispute over the ownership of intellectual property rights, which is explicitly addressed by the IP Ownership Provision.  Ex. 2 at ¶ 2. As such, Barela's allegations "touch matters" governed by the Agreement, which is all that is required for them to be deemed arbitrable and to compel arbitration.

## V.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE FAC PURSUANT TO RULE 12(b)(6)

Even if the Court determines that one or more of Barela's claims need not be arbitrated, it should still dismiss all of Barela's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   Barela Has Not Adequately Pled His Correction of Inventorship Claims

Barela has not adequately pled his correction of inventorship claims, which warrants dismissal under Rule 12(b)(6).[4]  To be a sole inventor of a patent, one

---

[4] Because Count II seeks a specific remedy – declaratory relief – with respect to Barela's correction of inventorship claim (Count I), it necessarily rises and falls with this claim.  *See, e.g.*, *Shkolnikov v. JPMorgan Chase Bank*, 2012

- 15 -

must have conceived of each and every element of every claim in the patent. *CardiAQ Value Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 122 (D. Mass. 2014). To be named as a co-inventor of a patent, one must contribute to the conception of at least one patent claim and engage or collaborate with the other co-inventors to conceive of the claim. *Id.*; *Ethicon, Inc. v. U.S Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). A putative sole or co-inventor's contribution to the conception of a claimed invention must be supported by corroborating evidence. *See Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302-03 (Fed. Cir. 2002). "[I]nventorship is determined on a claim-by-claim basis." *Id.* at 1302.

As such, to adequately plead a claim for sole inventorship, Barela must allege that he conceived of each and every element of every claim in the 787 Patent. *CardiAQ Value Techs.*, 57 F. Supp. 3d at 122. Similarly, to adequately assert co-inventorship, Barela must allege that he contributed to the conception of at least one claim of the 787 Patent and engaged or collaborated with the other co-inventors to conceive of this claim. *See id.* at 122-23. Lastly, Barela must plead the existence of evidence that corroborates his alleged conception. *St. Joseph Solutions, LLC v. Microtek Med., Inc.*, 2011 U.S. Dist. LEXIS 136192, at *33 (S.D. Ohio Nov. 28, 2011).

Barela's allegations fall well short. ***First***, and as an initial matter, it is not even clear whether Barela believes he should be the sole inventor of the 787 Patent or merely a co-inventor. Barela repeatedly hedges his bets and seeks a finding that he is either the sole inventor or a co-inventor of the 787 Patent, or perhaps even both: "Barela did ***jointly or individually*** conceive of ***one or more*** of the claims made in the 787 Patent." Ex. 1 at ¶ 59 (emphases added); *id.* at p. 15 (seeking "[a]

---

U.S. Dist. LEXIS 177573, at *66 (N.D. Cal. Dec. 14, 2012). As such, dismissal of Count I necessitates the dismissal of Count II. *Id.*

- 16 -

declaration that Barela is a co-inventor or inventor of the 787 Patent"); *see also id.* at ¶¶ 2, 29, 62.  As the purported inventor of the alleged Paver Invention (who has known about the 787 Patent for at least a year), Barela should know, at the very least, whether his contention is one of sole inventorship or co-inventorship.  To allege "either and/or both" fails to give Brock fair notice of the contours of Barela's correction of inventorship claim.  *See* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Second**, Barela fails to allege anything that would support a claim of sole inventorship, *i.e.*, any fact showing that he conceived of every element of each of the forty-four (44) claims in the 787 Patent.  At best, Barela alleges that he is the sole inventor or owner of the 787 Patent in conclusory fashion and without any supporting factual allegations.  *See, e.g.*, Ex. 1 at ¶¶ 2, 7, 59, 89; *id.* at p. 15 (Prayer for Relief for Counts I and II).  But the Court need not, and should not, accept these unsupported and conclusory allegations.  *See Luna*, 575 F. Supp. 2d at 1176.  As such, Barela's allegations of sole inventorship (to the extent there are any) are deficient.

**Third**, the FAC does not sufficiently allege a claim of co-inventorship.  Barela only identifies claims 1-10 of the 787 Patent.  Ex. 1 at ¶ 47.  Assuming these are the claims that Barela believes he co-invented, the FAC contains no allegations regarding (1) which elements of those claims Barela contributed to; and (2) how or when Barela engaged or collaborated with the other co-inventors to conceive of these claim elements.  Absent more specific allegations about his alleged conception and collaboration with the named co-inventors as to specific claims of the 787 Patent, the FAC fails to state a claim for co-inventorship.

**Lastly**, although Barela includes allegations that may touch on his conception of the Paver Invention (e.g., Ex. 1 at ¶¶ 15, 29, 59), he fails to include any allegations that show that his conception is supported by corroborating

1  evidence.  Such allegations are required to properly plead a correction of invention

2  claim.

3  **B.     Barela's Trade Secret Misappropriation Claim is Time-Barred**

4      In California, claims for trade secret misappropriation have a three year

5  statute of limitations that is triggered by either actual knowledge or constructive

6  knowledge.  Cal. Civ. Code § 3426.6 ("An action for misappropriation must be

7  brought within three years after the misappropriation is discovered or by the

8  exercise of reasonable diligence should have been discovered.").  Barela brought

9  his trade secret misappropriation claim on May 19, 2015; thus, it is untimely if

10 Barela knew or should have known of Brock's alleged misconduct by May 19,

11 2012.  *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1108-09

12 (N.D. Cal. 2012).  Because, as a matter of law, Barela should have known about

13 the alleged misconduct that underlies his trade secret misappropriation claim by at

14 least November 11, 2010, it is time-barred and must be dismissed.  *See id.* at 1109.

15     A plaintiff has sufficient constructive knowledge to trigger the statute of

16 limitations when he "has notice or information of circumstances to put a

17 reasonable person on inquiry, or has the opportunity to obtain knowledge from

18 sources open to his investigation."  *Cmty. Cause v. Boatwright*, 124 Cal. App. 3d

19 888, 902 (1981).  With respect to patent applications or patents, the public has

20 constructive notice of their contents when they are published or issued.  *See IBM*

21 *Corp. v. Zachariades*, 1995 U.S. App. LEXIS 36281, at *3-4 (9th Cir. Nov. 22,

22 1995); *Raza v. Siemens Med. Solutions USA Inc.*, 607 F. Supp. 2d 689, 693 (D.

23 Del. 2009).  Thus, a plaintiff whose cause of action is related to a patent "receives

24 constructive notice of its [cause of action] when the patent reveals information

25 sufficient to alert a reasonable person of the need to inquire further."  *Zachariades*,

26 1995 U.S. App. LEXIS 36281, at *4; *see also Gen. Bedding Corp. v. Echevarria*,

27 947 F.2d 1395, 1398 (9th Cir. 1991) (a plaintiff has constructive knowledge if it

28

has "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud" (internal quotations omitted)).  Indeed, "[c]ourts have recognized that ... the publicly noticed filing of patent protection constitutes, at a minimum, constructive knowledge for purposes of discovering a claim based on the misappropriation of trade secrets and commencing the limitations period[.]" *Raza*, 607 F. Supp. 2d at 693.

Barela's trade secret misappropriation claim is premised on Brock's alleged disclosure of Barela's purported Paver Invention/trade secret in the 787 Patent and related patent applications without Barela's consent and without acknowledging that Barela is an inventor.  *See, e.g.*, Ex. 1 at ¶¶ 1-7, 79-81; *see also* Ex. 6 at pp. 9, 14 (representations by Barela in the Oldcastle Litigation that his trade secret misappropriation and unjust enrichment claims "are based on the same underlying allegations" and "stem from the same facts" as his claim seeking to correct the inventorship of the 787 Patent).  As such, Barela relies upon several pieces of information taken from the 787 Patent – its title, its ownership by Brock, its Abstract, its identification of inventors (namely, its failure to name Barela as an inventor), and its identification of other related patent applications – to support his trade secret misappropriation claim.  Ex. 1 at ¶¶ 1, 2, 36-38, 43-45, 50.

However, each of these pieces of information could have been gleaned from a cursory review of the 787 Application when it published *on November 11, 2010*.  Indeed, all of this information could have been obtained by simply looking at the *face* of the 787 Application.  Brock's failure to name Barela as an inventor on the 787 Patent – the cornerstone of all of Barela's claims – is apparent from the face of the 787 Application (and, similarly, the face of the 787 Patent).  Exs. 3 and 4 at (75); Ex. 1 at ¶¶ 2, 37, 38, 50.  The title of the 787 Application is the same as the title of the 787 Patent and the same as the patent application that Barela received and on which Barela was originally named as an inventor.  Exs. 3 and 4 at (54);

- 19 -

Ex. 1 at ¶¶ 25, 27, 43.  Both the 787 Patent and the 787 Application identify Brock as the owner.  Exs. 3 and 4 at (73); Ex. 1 at ¶ 44.  The Abstracts of the 787 Application and the 787 Patent (which are also found on the face of the 787 Application and 787 Patent) are the same and both describe the inventions contained therein in language nearly identical to Barela's characterization of his Paver Invention.  Exs. 3 and 4 at (57); Ex. 1 at ¶¶ 12, 45.  And the face of the 787 Application, like the face of the 787 Patent, identifies the provisional applications filed on July 6, 2009, July 23, 2009, September 2, 2009, and January 21, 2010 upon which Barela relies to support his trade secret claim.  Exs. 3 and 4 at (60); Ex. 1 at ¶¶ 25, 27, 34-37.

The facts here are similar to those in *Zachariades*, in which the Ninth Circuit affirmed the district court's finding that the issuance of the patents to which IBM's causes of action related triggered the statute of limitations.  *Zachariades*, 1995 U.S. App. LEXIS 36281, at *2-4.  When the patents issued, they revealed "that the inventions [were] related to research conducted by Zachariades [the defendant] at IBM, that the patents were issued to Zachariades and not assigned to IBM, and that the patents were obtained without IBM counsel."  *Id.* at *4.  Because these facts showed "an intention by Zachariades to exploit the patent[s] for his own benefit," they "should have alerted IBM of the need to inquire further" and thus triggered the statute of limitations.  *Id.*

Similarly, in *Community Cause*, the plaintiff did not discover the public documents that alerted it to the defendant's alleged misconduct until six months before it brought certain causes of action.  *Cmty. Cause*, 124 Cal. App. 3d at 902.  These documents had first started becoming publicly available a year before the plaintiff discovered them.  *Id.*  The Court of Appeal found that the public availability of the documents triggered the one-year statute of limitations,

- 20 -

1    irrespective of the plaintiff's knowledge of the documents, making the causes of
2    action untimely.  *Id.* at 902-03.

3        The 787 Application became available on the Internet to the public,
4    including Barela, on November 11, 2010.  *See Ex Parte Hass*, 2006 Pat. App.
5    LEXIS 4413, at *7-8 (B.P.A.I. June 5, 2006) (noting that the USPTO's "Public
6    PAIR" website allows the public to view provisional applications); Culig Decl., ¶
7    17, Ex. 16 ("The Patent Application Information Retrieval (PAIR) system provides
8    IP customers a safe, simple, and secure way to retrieve and download information
9    regarding patent application status.").   Barela could have acquired all of the
10   information he now says evidences trade secret misappropriation by reviewing the
11   publicly available 787 Application.  Like in *Zachariades*, a review of the 787
12   Application, which purportedly discloses Barela's Paver Invention/trade secret but
13   does not name Barela as an inventor, would have alerted a reasonable person to
14   inquire further.  Moreover, as in *Community Cause*, the fact that Barela alleges that
15   he did not learn of this information until a year ago does not prevent the
16   publication of the 787 Application from constituting constructive notice sufficient
17   to trigger the statute of limitations.

18       As a matter of law, Barela had at least constructive knowledge of his trade
19   secret misappropriation claim as of November 11, 2010, when the 787 Application
20   was published.  *See Zachariades*, 1995 U.S. App. LEXIS 36281, at *3-4; *Cmty.*
21   *Cause*, 124 Cal. App. 3d at 902-03; *Raza*, 607 F. Supp. 2d at 692-94; *Creative*
22   *Compounds, LLC v. Boldt*, 2011 U.S. Dist. LEXIS 98210, at *4-6, *10-11 (S.D.
23   Cal. Aug. 31, 2011) (dismissing, as time-barred, a trade secret misappropriation
24   claim based on the improper incorporation of trade secrets into a patent application
25   because the statute of limitations was triggered once the patent application issued
26   as a patent).  Accordingly, the Court should dismiss Count III of the FAC.

27
28
                                    - 21 -

### C.     Barela's Unjust Enrichment Claim is Time-Barred and Preempted by CUTSA

The entire basis for Barela's claim that Brock's enrichment has been "unjust" is the same basis that supports his trade secret misappropriation claim: Brock's alleged disclosure of Barela's purported Paver Invention/trade secret in the 787 Patent and related patent applications without Barela's consent and without naming Barela as an inventor or owner.  Ex. 1 at ¶ 81 ("Brock improperly removed Barela's name from subsequently filed provisional patent applications and did conceal that fact from Barela."); *id.* at ¶ 90 ("This receipt of these benefits was achieved unjustly at least in part due to Brock's improper exclusion of Barela as an inventor and/or owner of the 787 Patent.").  Indeed, Barela has already represented that each of his claims "are based on the same underlying allegations" and that both his trade secret misappropriation claim and his unjust enrichment claim "stem from the same facts underlying his claim for correction for inventorship."  Ex. 6 at pp. 9, 14.    Barela's reliance on the same facts for both trade secret misappropriation and unjust enrichment dooms his unjust enrichment claim for two independent reasons.

*First*, Barela brought his unjust enrichment claim too late.  In California, the statute of limitations applicable to a claim for unjust enrichment "is based on the underlying wrong."  *Barragan v. Personniq, LLC*, 2014 U.S. Dist. LEXIS 131294, at *15-16 (N.D. Cal. Sept. 17, 2014).  Here, Barela's unjust enrichment claim is based on the same alleged misconduct that underlies his trade secret misappropriation claim.  Because Barela's trade secret claim is untimely – based on his constructive knowledge of the alleged misconduct by November 11, 2010 – so too is his unjust enrichment claim.

*Second*, Barela's unjust enrichment claim is preempted by CUTSA, which prohibits "common law claims that are 'based upon the same nucleus of facts'" as

- 22 -

a trade secret misappropriation claim.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.* 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  Specifically, an unjust enrichment claim based on the same allegations as a trade secret misappropriation claim is preempted.  *See, e.g.*, *Digital Envoy*, 370 F. Supp. 2d at 1035; *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 2014 U.S. Dist. LEXIS 130518, at *14 (C.D. Cal. Sept. 16, 2014).  Because Barela's unjust enrichment claim is "based on the same underlying allegations" and "stem[s] from the same facts" as his trade secret misappropriation claim, it is undisputedly "based upon the same nucleus of facts" as his claim for trade secret misappropriation.  Ex. 6 at pp. 9, 14; *see also* Ex. 1 at ¶¶ 81, 88-90.  As such, Count IV should be dismissed.

## VI.   IF THE COURT COMPELS ARBITRATION, IT SHOULD DISMISS THE FAC WITH PREJUDICE OR, AT LEAST, STAY THE LITIGATION

Once the Court has determined that a party's claims must be arbitrated, the Court must (1) direct the parties to proceed to arbitration; and (2) stay or dismiss the pending litigation.  *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011).  The Court may dismiss claims that are subject to arbitration with prejudice.  *Id.* at 1169.  If the Court finds that Barela's claims are subject to mandatory arbitration, Brock requests that the Court dismiss them with prejudice.  Alternatively, should the Court find that dismissal of the FAC with prejudice is inappropriate, Brock respectfully requests that this litigation be stayed pending the completion of the parties' arbitration.  9 U.S.C § 3.

## VII.   ALTERNATIVELY, THE COURT SHOULD DISMISS THE FAC WITH PREJUDICE PURSUANT TO RULE 12(b)(6)

If the Court determines that one or more of Barela's claims are not subject to mandatory arbitration, Brock respectfully requests that the Court dismiss those

claims with prejudice.  Dismissal of a claim with prejudice is appropriate "where it is clear that the complaint cannot be saved by any amendment." *Creative Compounds*, 2011 U.S. Dist. LEXIS 98210 at *11.  Barela has had three opportunities to develop legally supportable allegations:  his proposed complaint in the Oldcastle Litigation; his original Complaint in this litigation; and the FAC that Brock challenges in this motion.  Yet, he has failed to do so.  Clearly, Barela's allegations cannot state a claim upon which relief can be granted.

As for Counts I and II, Barela, as an alleged inventor of the 787 Patent, should know the extent of his inventive contribution to the 787 Patent (especially now that he has had over a year to formulate his allegations) and has presumably included all of the facts and allegations he could to support his correction of inventorship claim.  *Cf. Scafidi v. W. Loan & Bldg. Co.*, 72 Cal. App. 2d 550, 571 (1946) (recognizing the judicial "right to presume that the pleader had stated his side of the controversy as strongly and as favorably as all the facts known to him would permit").  Because Barela nevertheless has still failed to adequately state a claim for relief, these claims should be dismissed with prejudice.

Counts III and IV, which are time-barred, cannot be remedied by amendment.  *Creative Compounds*, 2011 U.S. Dist. LEXIS 98210 at *11.  Thus, dismissal of these claims with prejudice is proper.

In addition, and despite amending his Complaint, Barela has failed to plead any factual allegations in support of his unjust enrichment claim that are different from those that support his trade secret misappropriation claim.  Indeed, there is no indication that Barela has any basis for his unjust enrichment claim separate and independent from the basis underlying his trade secret misappropriation claim.  As such, dismissal of Count IV, which is preempted by CUTSA, with prejudice is appropriate.  *See, e.g.*, *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 938 (N.D. Cal. 2008).

## VIII.  CONCLUSION

Brock respectfully moves this Court for an Order (1) compelling Barela to arbitrate the issues raised in the FAC; and (2) dismissing the FAC in its entirety with prejudice.  Alternatively, if the Court determines that Barela's claims should not be dismissed, Brock respectfully requests a stay of the current proceedings while the parties arbitrate the issues raised in the FAC.

In the alternative, and if the Court determines that one or more of Barela's claims are not subject to mandatory arbitration, Brock respectfully seeks the dismissal of those claims with prejudice.


Dated:  July 8, 2015          Respectfully submitted,

                              /s/ Nicolas A. Jampol
                              _____

                              Nicolas A. Jampol
                              DAVIS WRIGHT TREMAINE LLP

                              David J. Sheikh
                              Joseph A. Culig
                              LEE SHEIKH MEGLEY & HAAN LLC

                              Attorneys for Defendant
                              BROCK USA, LLC d/b/a
                              BROCK INTERNATIONAL LLC

- 25 -