# Exhibit 2 to Declaration of Joseph A. Culig in Support of Brock's Motion to Compel Arbitration or, in the Alternative, to Dismiss Barela's <u>First Amended Complaint</u>

## MUTUAL CONFIDENTIALITY AND NON-USE AGREEMENT

THIS CONFIDENTIALITY AND NON-USE AGREEMENT (the "Agreement") is made as of this 1 day of June 2009, between ECOALLIANCE, 500 N SEQUOIA AVE, ONTARIO CA 91761 USA ("Company"), and BROCK INTERNATIONAL LLC, 2840 Wilderness Place, Boulder, CO 80301, USA ("Brock"). Company and Brock may sometimes be collectively referred to herein as the "Parties" or individually as a "Party."

### RECITALS

A. Brock is in the business of developing, manufacturing and marketing products (the "Brock Products").

B. Company and Brock are concurrently contemplating a business relationship in which Brock will sell products to Ecoalliance, and will develop products for sale to Ecoalliance, and Ecoalliance will purchase products from Brock (the "Transaction").

C. In connection with the Transaction, the Parties will be disclosing written and oral confidential information ("Confidential Information") to each other from time to time.

D. The Parties acknowledge the need for the strict confidentiality and non-use in connection with Confidential Information.

NOW THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

### AGREEMENT

1. CONFIDENTIAL TREATMENT OF INFORMATION; NON-USE.

    1.1. In connection with the foregoing, the Party receiving Confidential Information (the "Recipient") agrees to hold in the highest confidence all Confidential Information provided to it by the Party which discloses the Confidential Information (the "Disclosing Party"). Recipient shall not disclose or provide any Confidential Information to any person outside of Recipient's organization without the prior written consent of Disclosing Party. Recipient shall not disclose or provide any of the Confidential Information to any person within Recipient's organization except as provided in Section 1.2.

    1.2. The Recipient may disclose the Confidential Information to its attorneys, directors, managers, officers and employees (collectively referred to as the "Representatives"), *provided, however*, that such Representatives have a demonstrable need to know the Confidential Information for the purpose of the Transaction or discussions relating thereto and that such Representatives are legally bound to maintain the Confidential Information in confidence as provided herein. Pursuant thereto, the Recipient will (i) inform each of the Representatives receiving Confidential Information of the confidential nature of the Confidential Information and



1



of the existence and the terms of this Agreement, (ii) direct the Representatives to treat the Confidential Information in accordance with the terms of this Agreement and not to use it other than in connection with the Transaction and discussions relating thereto, and (iii) be responsible for any improper use of the Confidential Information by any Representative (including, without limitation, those Representatives who, subsequent to the first date of disclosure of Confidential Information hereunder, cease to be employed or otherwise associated with Recipient).

1.3. The Recipient shall, and shall cause the Representatives to, (a) use its and their best efforts to protect and avoid disclosure or unauthorized use of the Confidential Information and (b) not reverse engineer, disassemble or de-compile any samples, prototypes or other tangible objects that embody the Confidential Information.

1.4. The Recipient shall not use the Confidential Information for any commercial, competitive or other purpose whatsoever, except for use in connection with the Transaction and discussions related thereto.

2. **LIMITED LICENSE; OWNERSHIP OF IMPROVEMENTS.** Neither Party grants to the other any license to its trade secrets, patents, patent applications or other intellectual property, except for the right to analyze such items in connection with the Transaction. Notwithstanding anything to the contrary, the intellectual property rights to any improvements to the Brock Products developed by Company as a result of, or in the course of the Transaction, shall belong exclusively to Brock.

3. **DEFINITION OF CONFIDENTIAL INFORMATION.** The Confidential Information covered by this Agreement includes any information designated as such in writing by the Disclosing Party, together with all information which is verbally provided and designated in writing as Confidential Information within 30 days of the disclosure; *provided, however,* that all information related to the Brock Product, including any relate expertise or know-how related to Brock's markets, and Brock's proposed pricing and financial projections shall be Confidential Information. Notwithstanding the foregoing, the following information is not Confidential Information and shall <u>not</u> be subject of this Agreement: (i) information in the public domain through the lawful action of parties other than Recipient (or persons who obtained such information through Recipient); (ii) information required to be disclosed as a result of an order of a court of appropriate jurisdiction in a proceeding in which Disclosing Party had an opportunity to contest disclosure; or (iii) information developed by independently by Recipient prior to its receipt of any Confidential Information from the Disclosing Party.

4. **RETURN OF DISCLOSED MATERIAL.** Upon termination or completion of the Transaction, or at any time upon request of the Disclosing Party, the Recipient shall and shall cause the Representatives to (a) return to the Disclosing Party, or in the case of Confidential Information stored in electronic, magnetic or digital media, at the election of the Disclosing Party, erase or render unreadable, all materials furnished (including, without limitation, any working papers, memoranda, notes and other materials prepared by the Recipient containing any Confidential Information or extracts therefrom) that contain Confidential Information, and agree that the Recipient and the Representatives will not retain any copies thereof and (b) if so requested by the Disclosing Party, deliver a certificate of an appropriate executive officer



2

certifying that all such Confidential Information within the Recipient's possession or control, or the possession or control of the Representatives, has been returned or erased, as appropriate, and that no such Confidential Information has been retained

5. **SURVIVAL.** This Agreement shall continue in force with respect to Confidential Information until five (5) years after date of termination of the Transaction; *provided, however*, that the non-disclosure and non-use obligations with respect to the Brock Product and the Brock Process shall continue until each enters the public domain through no fault of Company.

6. **REMEDIES.** Without prejudice to the rights and remedies otherwise available to it, the Disclosing Party shall be entitled to equitable relief by way of injunction to enforce its rights hereunder.

7. **MISCELLANEOUS PROVISIONS.**

7.1. **SUCCESSORS AND ASSIGNS.** The provisions of this Agreement shall be binding upon, and inure to the benefit of, the respective successors, assigns, heirs, executors and administrators of the parties hereto.

7.2. **GOVERNING LAW; VENUE.** The validity and interpretation of this Agreement shall be governed by the laws of the State of Colorado. Except as provided below, any and all disputes arising under or related to this Agreement which cannot be resolved through negotiations between the Parties shall be submitted to binding arbitration. If the Parties fail to reach a settlement of their dispute within thirty (30) days after the earliest date upon which one of the Parties notifies the other(s) in writing of the existence of and its desire to attempt to resolve the dispute, then the dispute shall be promptly submitted to arbitration by a single arbitrator through the Judicial Arbiter Group of Denver, Colorado ("JAG"), any successor of the Judicial Arbiter Group, or any similar arbitration provider who can provide a former judge to conduct the arbitration if JAG is no longer in existence. The arbitrator shall be selected by JAG, if possible, on the basis of his or her expertise in the subject matter(s) of the dispute. The decision of the arbitrator shall be final, non-appealable and binding upon the Parties, and it may be entered in any court of competent jurisdiction; *provided, however*, that any party to the arbitration proceeding may seek a court order vacating the decision of the arbitrator in accordance with the provisions of and on the grounds set forth in C.R.S. § 13-22-214 and/or a modification or correction of the arbitrator's award in accordance with the provisions of C.R.S. §§ 13-22-211 or 13-22-215, and may take an appeal from court orders related to the arbitration proceeding or award as provided in C.R.S. § 13-22-221.

The arbitration shall take place in Boulder, Colorado. The arbitrator shall be bound by the laws of the State of Colorado applicable to the issues involved in the arbitration and all Colorado rules relating to the admissibility of evidence, including, without limitation, all relevant privileges and the attorney work product doctrine. Discovery shall be permitted and shall be completed in accordance with the time limitations prescribed in the Colorado Rules of Civil Procedure, unless extensions of such time limitations are approved by all parties to the arbitration or are ordered by the arbitrator on the basis of strict necessity adequately demonstrated by the party requesting an extension of time. The arbitrator shall have the power



3

to grant equitable relief where available under Colorado law, and shall be entitled to make an award of punitive damages where such an award is permitted by Colorado law. The arbitrator shall issue a written opinion setting forth his or her decision and the reasons therefore within thirty (30) days after the arbitration proceeding is concluded. The obligation of the parties to submit any dispute arising under or related to this Agreement to arbitration as provided in this section shall survive the expiration or earlier termination of this Agreement. Notwithstanding the foregoing, any party to this Agreement may seek to obtain an injunction or other appropriate relief from a court to preserve the status quo with respect to any matter pending conclusion of the arbitration proceeding, but no such application to a court shall in any way be permitted to stay or otherwise impede the progress of the arbitration proceeding.

In the event of any arbitration or litigation being filed or instituted between the parties concerning this Agreement, the prevailing party will be entitled to receive from the other party or parties its attorneys' fees, witness fees, costs and expenses, court costs and other reasonable expenses, whether or not such controversy, claim or action is prosecuted to judgment or other of relief. The "prevailing party" is that party which is awarded judgment or other legal or equitable relief as a result of trial or arbitration, or who receives a payment of money from the other party in settlement of claims asserted by such party. If both parties receive a judgment, settlement payment or other award or relief, the court or the arbitrator shall determine which party is the prevailing party, taking into consideration the merits of the claims asserted by each party, the relative values of the judgments, settlements or other forms of relief received by each party, and the relative equities between the parties.

       7.3.   NOTICE. Any notice given in connection with this Agreement shall be in writing and may be delivered by email to the other party at the party's email address stated herein (as amended by written notice from time to time), by fax, by private delivery services such as Federal Express, or by U.S. Mail, certified, return receipt requested. Delivery by e-mail or fax shall promptly be followed by delivery through private delivery service or U.S. Mail.

       7.4.   INDEPENDENT REPRESENTATION. Each Party is entitled to be represented by independent legal counsel with respect to entering into this Agreement, and hereby acknowledges that it has retained independent legal counsel to advise it of its rights and obligations hereunder, or has voluntarily waived its right to do so.

       7.5.   ENTIRE AGREEMENT; SEVERABILITY; AMENDMENTS; WAIVER. This Agreement constitutes the entire agreement between the parties hereto concerning the matters covered herein and supersedes all prior agreements and/or understandings, between the parties, whether written or oral, concerning the matters addressed herein; and there are no understandings, agreements, representations or warrants, express or implied, which are not specified in writing and signed by the parties hereto. In the event that any of the terms of this Agreement are or become illegal or unenforceable, such terms shall be null and void and shall be deemed deleted from this Agreement, and all the remaining terms of this Agreement shall remain in full force and effect. Except as otherwise expressly provided herein, the Parties may amend this Agreement, from time to time, in writing signed by duly authorized officers of the Parties. No waiver of any provision of this Agreement, nor consent to any departure by either party therefrom, shall in any event be effective unless the same shall be in writing and signed by the



4



party to be charged with the waiver or consent, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year above first written.

Ecoalliance

By: _____Greg Barela_____
Title: President

E-mail: greg@ecoalliance.com

Brock International, LLC

By Richard Runkles
Title: President

E-mail: rrunkles@brock-international.com